UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE L. A.,[1]<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MARTIN O'MALLEY,[2]<br><br>　　　　　　Defendant. | Case No.: 3:23-cv-00147-VET<br><br>**ORDER REGARDING JOINT MOTION FOR JUDICIAL REVIEW**<br><br>[Doc. No. 11] |

## I.  INTRODUCTION

Plaintiff seeks review of Defendant Commissioner's denial of her application for disability insurance benefits and supplemental security income. Doc. No. 1. Before the Court is the parties' Joint Motion for Judicial Review of Final Decision of the Commissioner of Social Security ("Joint Motion"). Doc. No. 11. Therein, Plaintiff seeks resolution of the following issues: (1) whether the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination is supported by substantial evidence

---

[1]  Partially redacted in compliance with Civil Local Rule 7.1(e)(6)(b).
[2]  Martin O'Malley, Commissioner of the Social Security Administration, is automatically substituted for Kilolo Kijakazi pursuant to Fed. R. Civ. P. 25(d).

when he failed to assess Plaintiff's mental impairments as severe; and (2) whether the ALJ's RFC determination is supported by substantial evidence given new evidence submitted to the Appeals Council. Doc. No. 11 at 14. Having considered the parties' arguments, applicable law, and the record before it, and for the reasons discussed below, the Court **VACATES** the Commissioner's decision denying benefits and **REMANDS** for further administrative proceedings consistent with this Order.

## II.   BACKGROUND

### A.   Procedural History

Pursuant to the Social Security Act, Plaintiff applied for disability insurance benefits and supplemental security income on May 19, 2020, alleging disability commencing on January 17, 2019. Administrative Record ("AR") 196–197.[3] The Commissioner denied the application initially and on reconsideration. AR 125–129, 139–144. Plaintiff requested a de novo hearing before an ALJ, and on December 2, 2021, the ALJ held a hearing. AR 146, 40–74. On January 27, 2022, the ALJ found that Plaintiff was not disabled because she was able to perform past relevant work. AR 14–33. On December 8, 2022, the Appeals Council declined review, rendering the ALJ decision the final decision of the Commissioner. AR 1–4. On January 26, 2023, Plaintiff initiated this action seeking judicial review of the ALJ's decision. Doc. No. 1. The parties filed the Joint Motion on August 3, 2023. Doc. No. 11.

### B.   Summary of the ALJ's Decision

The ALJ followed the Commissioner's five-step sequential evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since January 17, 2019," the alleged onset date. AR 19. At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, irritable bowel syndrome, lumbar

---

[3]   The AR is electronically filed at Doc. No. 7.

degenerative disc disease, and headaches. *Id.* In analyzing Plaintiff's mental impairments at step two, the ALJ considered the four areas of mental functioning commonly referred to as the "paragraph B" criteria: 1) understanding, remembering, and applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. AR 21–22 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). The ALJ found no limitation in "interacting with others" and "mild" limitations in the remaining three paragraph B criteria. AR 21–22. Based thereon, the ALJ concluded that:

> The [Plaintiff's] medically determinable mental impairments of major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore non-severe.

AR at 21.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or was medically equivalent to those in the Commissioner's Listing of Impairments. AR 23. Before proceeding to step four, the ALJ assessed Plaintiff's RFC and found that she has the RFC to perform light work, with the following limitations: (1) occasionally perform postural activities and (2) avoid work environments that would expose her to concentrated cold, heat, vibration, pulmonary irritants, or hazards. AR 25. The RFC included no mental limitations. *Id.*

As part of the RFC assessment, the ALJ considered the mental health opinions of Dr. Ernest Banger, the psychological consultative examiner, and Dr. E. Campbell, the state agency psychological consultant. AR 30–32. He found Dr. Banger's opinion partially persuasive, stating that Dr. Banger's "moderate limitations" findings were inconsistent with the totality of the evidence. AR 31. The ALJ found Dr. Campbell's opinion unpersuasive, citing examples in the record as the basis for concluding that "the record does not support Dr. Campbell's opinion as to mental limitations in the residual functional capacity." AR 31–32, 108–109. The ALJ also considered Plaintiff's testimony on "mental issues," specifically testimony that she has memory loss and panic attacks one to three

times per week. AR 25. As part of his RFC analysis, the ALJ states that he took into consideration statements and objective medical evidence regarding Plaintiff's fibromyalgia, irritable bowel syndrome, lumbar degenerative disease, and headaches, as well as her asthma (which he determined to be non-severe). AR 32 (summarizing the conditions considered by the ALJ). Although he refers to "previously discussed non-severe impairments," *see* AR 25, the ALJ does not list or expressly reference or analyze the mild mental limitations he identified at step two. Nor does the ALJ discuss or incorporate by reference his analysis of the paragraph B criteria at step two. Nonetheless, at step two, the ALJ states that he "considered all the medically determinable impairments when determining the [RFC] for [Plaintiff]." AR 22.

At step four, based on Plaintiff's RFC, the ALJ found that Plaintiff could perform past relevant work as an automobile salesperson, head animal keeper, retail store manager, and restaurant manager. *Id.* The ALJ relied, in part, on the testimony of a Vocational Expert ("VE"). *Id.* Having found that Plaintiff could perform past relevant work, the ALJ did not continue to step five in the sequential evaluation process.

### C.  New Evidence Submitted to the Appeals Council

Following the ALJ's decision, Plaintiff submitted to the Appeals Council a one-page letter from Dr. Ray Mabaquiao, dated February 4, 2022 ("Mabaquiao Letter"). AR 13. Therein, Dr. Mabaquiao opines that Plaintiff is "unable to physically perform work and maintain employment due to her multiple medical problems." *Id.* He states that Plaintiff "spends the majority of her time at home laying down in bed" and relies on her mother to do household chores as she is "unable to maintain her household." *Id.* Dr. Mabaquiao also indicates that "as far as [he] can tell," Plaintiff suffers from "a type of spondyloarthropathy SpA" that causes chronic spine pain and painful swollen stiff joints and is "possibly associated with her chronic diarrhea." *Id.* He details Plaintiff's gastrointestinal problems and then describes Plaintiff's various treatments and challenges in treating her conditions. *Id.* The Appeals Council concluded that the Mabaquiao Letter "does not show a reasonable probability that it would change the outcome of [the ALJ's] decision." AR 2.

## III. STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (substantial evidence is "more than a mere scintilla, but less than a preponderance"). A court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

The Court may not impose its own reasoning to affirm the ALJ's decision. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotations omitted). Thus, "review of an ALJ's fact-finding for substantial evidence is deferential, and the threshold for such evidentiary sufficiency is not high." *Id.* at 1159 (internal quotations omitted) (quoting *Biestek*, 587 U.S. at 103); *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) ("Overall, the standard of review is highly deferential.").

Lastly, the Court will not reverse for harmless error. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). "An error is harmless only if it is inconsequential to the ultimate nondisability determination." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (internal quotations omitted).

## IV. DISCUSSION

### A. Whether The ALJ's RFC Determination Is Supported By Substantial Evidence When He Failed To Assess Plaintiff's Mental Impairments As Severe

In the context of this first issue, Plaintiff raises arguments that, in essence, present two discrete questions. First, whether the ALJ erred at step two in finding that Plaintiff's mental impairments were not severe. Doc. No. 11 at 16–17. Second, whether the ALJ subsequently erred by not considering all of Plaintiff's impairments, including her non-severe mental impairments, as part of the RFC assessment. *Id.* at 17–18. The Court addresses each in turn.

#### 1. Determination of Plaintiff's Mental Impairments As Non-Severe

Step two of the Commissioner's five-step evaluation process requires the ALJ to determine whether an impairment is severe or not severe. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). "[A]n ALJ may find an impairment or combination of impairments 'not severe' at step two only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023) (citing *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). "In analyzing a mental impairment . . ., the Secretary must consider the evidence in the case record - the mental status examination and psychiatric history." *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994).

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). The purpose is to identify at an early stage those claimants whose medical impairments are so slight that it is unlikely they are disabled even if their age, education, and experience is considered. *Bowen*, 482 U.S. at 153. The Court analyzes step two by asking whether the ALJ had substantial evidence to find that the medical evidence "clearly established" that Plaintiff did not have a severe mental impairment or combination of impairments. *Webb*, 433 F.3d at 687; *see also Glanden*, 86 F.4th at 844.

     The ALJ concluded that Plaintiff's mental impairments were non-severe following an analysis of the paragraph B criteria. AR 21. First, the ALJ found Plaintiff has a mild limitation in understanding, remembering, or applying information. *Id.* He reaches this conclusion based on Dr. Banger's October 30, 2020 mental status examination ("October 2020 Exam"), showing that Plaintiff was "alert and oriented" with "normal naming and repetition and normal fund of knowledge." *Id.* (citing AR 974). Despite Plaintiff's trouble recalling objects after a 5-minute delay, the ALJ notes that she could "recall 3 out of 3 [objects] immediately, recall what she had for breakfast, recall her date of birth, name two Presidents of the United States, and accurately state the number of days in a week and months in year." *Id.* The ALJ also cites Plaintiff's ability to pay bills and handle her own money. *Id.*

     Next, the ALJ found no limitations in interacting with others. To support this finding, he relies on Plaintiff's reports that "she regularly socializes with others, including talking on the telephone and video chatting; she gets along very well with authority figures; and she has never lost a job due to issues getting along with others." *Id.* (citing AR 289–297). The ALJ also cites the October 2020 Exam, pointing to Plaintiff's self-described relationship with family and friends as "fair," as well as her cooperative mood and "good" eye contact. *Id.* (citing AR 974). Finally, he cites to Plaintiff's reported activities, which include giving vocal lessons. *Id.* (citing AR 1650).

     The ALJ next found that Plaintiff has a mild limitation in concentrating, persisting, or maintaining pace. *Id.* He notes that Plaintiff "could pay attention for 5 to 30 minutes at a time; she does not finish tasks once she starts them; and she does not handle stress or changes in routine well." *Id.* (citing AR 289–297). Plaintiff also "could not perform Serial [sevens] or spell 'music' forward or backward."[4] *Id.* (citing AR 974). Still, the ALJ

---

[4] The ALJ states that Plaintiff "could not perform Serial 3's" but in the next sentence states that she "was able to perform Serial 3's." AR 21. The record confirms that the

highlights again findings from the October 2020 Exam and cites Plaintiff's April 2019 "continuous performance test for assessing attention and impulse control," in which her "Performance Index and Accuracy Index" and total scores were within "normal range." AR 21–22 (citing AR 378–383). He emphasizes Plaintiff's ability to watch television and read without difficulty, generally manage her finances, and drive, "which necessarily requires a person to adhere to traffic signs and signals, maintain a vehicle in a lane of traffic, respond to changes in traffic patterns, and either remember or follow directions." *Id.* (citing AR 289–297).

Finally, the ALJ found the Plaintiff has a mild limitation in adapting or managing oneself. AR 22. Citing the April 2019 tests, the ALJ finds that Plaintiff "cares for her own personal hygiene and uses detailed calendars and charts to manage her medications and other medical-related issues." *Id.* (citing AR 289–297). Plaintiff also can prepare simple meals, with limitations on full meal preparation attributable to inflammation rather than mental issues, and that she only required occasional help with household chores also due to pain and inflammation rather than mental issues. *Id.* Additionally, the ALJ again notes Plaintiff's ability to drive a car and generally manage her own finances. *Id.* Lastly, the ALJ cites to Plaintiff's psychotherapy notes, which reference her ability to give voice lessons, garden, and help an elderly couple. *Id.* (citing AR 1639, 1650).

Ultimately, the ALJ concludes that Plaintiff's medically determinable mental impairments are non-severe because they "cause no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the [Plaintiff's] ability to do basic work activities." AR 22 (emphasis in original). The Court finds that this conclusion is not supported by substantial evidence.

---

initial reference to "Serial 3's" is a typographical error that should read Serial "sevens," as Plaintiff was able to perform serial threes but unable to perform serial *sevens*. *See* AR 974 ("The claimant was not able to perform serial sevens. She was able to perform serial threes. She was not able to spell the word music forward or backwards.").

As the ALJ acknowledges, Plaintiff suffers from major depressive disorder, generalized anxiety disorder, and PTSD. While the ALJ focuses on certain findings in Dr. Banger's October 2020 Exam, he ignores others within the same report. For instance, Dr. Banger found moderate limitations in Plaintiff's ability to follow detailed instruction and interact appropriately with the public, coworkers, and supervisors. AR 975. Dr. Banger also notes that Plaintiff takes psychotropic medication and does not do household chores, run errands, shop, or cook, observations the ALJ fails to mention. AR 972–973. Separately, Dr. Campbell reported that Plaintiff was depressed/anxious, with sustained concentration and persistence limitations. AR 115. He further found that Plaintiff had moderate limitations in her abilities to (i) understand and remember detailed instructions, (ii) carry out detailed instructions, and (iii) maintain attention and concentration for extended periods. AR 115–116. Plaintiff's psychotherapy records also show the severity rating for her anxiety and major depressive disorder as moderate. *See, e.g.*, AR 1642, 1647, 1654, 1688, 1694, 1755. Those same records show periods when Plaintiff is losing weight due to not eating, describes her PTSD triggers, and document that Plaintiff occasionally experiences suicidal thoughts. AR 1644, 1645, 1697, 1726.

Also, while the ALJ emphasizes activities like voice lessons and driving, her therapy records also show periods when Plaintiff is often not giving voice lessons or driving. *See, e.g.*, AR 1645, 1650. Moreover, the ALJ seemingly faults Plaintiff for trying to lead a normal life, like driving, talking to people on the phone, or getting along with authority figures. "[A] disability claimant need not 'vegetate in a dark room' in order to be deemed eligible for benefits." *Reddick*, 157 F.3d at 722 (quoting *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)). Nor should disability claimants "be penalized for attempting to lead normal lives in the face of their limitation." *Id.*; *see also Webb*, 433 F.3d at 688 ("The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.").

In short, this evidence establishes that the *combination* of Plaintiff's mental impairments constitutes more than a "slight abnormality" and satisfies step two's de minimis standard. *Smolen*, 80 F.3d at 1290 ("At the step two inquiry, the ALJ must consider the combined effect of all the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe."); *Delgado v. Comm'r of SSA*, 500 F. App'x 570, 570–571 (9th Cir. 2012) (finding a severe mental impairment at step two when claimant had "fair to poor" ability to make personal and professional adjustments and could maintain concentration for two-hour increments except during times of stress).

However, the Court finds that any error at step two was harmless. The ALJ also concluded at step two that Plaintiff suffered from severe physical impairments, allowing the sequential evaluation process to continue to the next steps. Hence, once Plaintiff prevailed at step two, it made no difference for the ALJ's ensuing analysis whether her medically determinable mental impairments were previously considered "severe" since the ALJ was required to consider *all* impairments—severe and non-severe—in his RFC analysis. *Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018); *see also Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, [i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.") (internal quotations and citation omitted); *Jennifer T. v. O'Malley*, No. 23-cv-0357-MAA, 2024 U.S. Dist. LEXIS 18998, at *9–*10 (holding that ALJ's finding that mental impairments were non-severe did not warrant reversal because "the ALJ resolved the severity step in Plaintiff's favor by finding that Plaintiff did have other severe impairments," and therefore "the classification of Plaintiff's mental impairments as non-severe could not have prejudiced her") (internal citation omitted).

## 2. Determination of Plaintiff's Residual Functional Capacity

Plaintiff also contends that the ALJ erred in the RFC assessment, arguing that the "RFC was devoid of any non-exertional limitations related to Plaintiff's mental health." Doc. No. 11 at 18. The ALJ is not required to include every impairment in the RFC, but he is required to consider each impairment, and in this regard, the ALJ erred.

The RFC is the maximum a claimant can do in the workplace despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Between steps three and four of the sequential analysis, the ALJ is required to assess all of a claimant's impairments—including those that are not "severe"—in combination as part of the RFC determination. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Therefore, "in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck*, 869 F.3d at 1049 (9th Cir. 2017).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (emphasis in original). In assessing mental abilities specifically, the ALJ must consider the nature and extent of the claimant's mental limitations and restrictions to determine a claimant's RFC "for work activity on a regular and continuing basis." 20 C.F.R. §§ 404.1545(c), 416.945(c). The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). The Court will affirm an ALJ's determination of a claimant's RFC "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, in formulating the RFC, the ALJ addresses Dr. Banger's October 2020 Exam and Dr. Campbell's December 2020 psychological assessment. AR 30–32 While the ALJ analyzes the psychological assessments in detail, there is no discussion of his own findings

at step two regarding Plaintiff's mild mental limitations. Specifically, after concluding at step two that Plaintiff had mild mental limitations in three of the four broad functional areas, *see* AR 21–22, the ALJ failed to discuss or analyze how these mild mental limitations factored into the RFC determination. *Hutton v. Astrue*, 491 F. App'x 850, 851 (9th Cir. 2012) (holding that ALJ was required to consider the claimant's PTSD and erred by disregarding his own finding that claimant's nonsevere PTSD caused some "mild" limitations in the areas of concentration, persistence, or pace); *Loader*, 722 F. App'x at 654–55 ("Once past Step 2, the ALJ was required to consider [the claimant's] depression as a medically determinable impairment, even if it was not found to be severe.").

Moreover, the ALJ's boilerplate statement that he "considered all the medical determinable impairments when determining" the RFC, *see* AR 22, does satisfy the requirement that he provide a detailed RFC assessment. *See Carlson v. Berryhill*, No. 18-cv-03107-LB, 2019 U.S. Dist. LEXIS 38893, at *49 (N.D. Cal. Mar. 10, 2019) (holding that ALJ erred by failing to "explain that he had considered the mild mental limitations or nonsevere impairments and offered only boilerplate language that the plaintiff's RFC" reflected the degree of limitation found in his "'paragraph B' mental function analysis"); *Barrera v. Berryhill*, No. CV 17-07096-JEM, 2018 U.S. Dist. LEXIS 151317, at *14 (C.D. Cal. Sep. 5, 2018) (finding that ALJ erred by not saying she had considered mild limitations or non-severe impairments and offering only boilerplate language that she had considered "all symptoms"). In sum, the ALJ erred by failing to address Plaintiff's non-severe mental impairments, and specifically the mild mental limitations he found, in formulating Plaintiff's RFC. *See Hutton*, 491 F. App'x at 851; *Kitty S. v. Kijakazi*, No. EDCV 21-00390-JEM, 2022 U.S. Dist. LEXIS, at *5–7 (C.D. Cal. June 13, 2022) (finding reversible error when the ALJ made "mild step two paragraph B findings" but did not discuss claimant's non-severe mental impairments at later steps, "in particular in formulating RFC"); *Victor R. v. O'Malley,* No. 23-cv-00501-GPC-BGS, 2024 U.S. Dist. LEXIS 18120, at *15 (S.D. Cal. Feb. 1, 2024) (finding error when the ALJ did not address four mild

limitations in the RFC determination), *report and recommendation adopted by* 2024 U.S. Dist. LEXIS 52972 (S.D. Cal. Mar. 25, 2024).

Furthermore, this error was not harmless. At step four, the ALJ concluded that Plaintiff was capable of performing past relevant work as an "automobile salesperson," "retail store manager," "retail store manager and restaurant manager," and "head animal keeper." AR 32. These occupations have specific vocational preparation times ("SVP") of 6 and 7, meaning that they are skilled occupations. SSR 00-4p, 2000 SSR LEXIS 8 (jobs with SVP ratings of 5 to 9 are skilled work); *see also* AR 67–68. An RFC that considers Plaintiff's mild mental limitations may be inconsistent with Plaintiff's past relevant work. *See, e.g.*, *Victor R.*, 2024 U.S. Dist. LEXIS 18120, at *16 (not harmless error when the ALJ found claimant could perform past relevant work without considering mild mental limitations); *David Allan G. v. Comm'r of SSA*, No. 21-cv-00162-DKG, 2023 U.S. Dist. LEXIS 43084, at *6 (D. Idaho Mar. 10, 2023) (not harmless error because it was unclear whether Plaintiff could perform past relevant work despite mild mental limitations); *Carlson*, 2019 U.S. Dist. LEXIS 38893, *50 ("[T]he court cannot determine what would have happened had the ALJ considered the plaintiff's mild mental impairments when assessing the RFC or how the [VE] would have testified had that limitation been included in the hypotheticals posed.").

Also, the ALJ did not include any mild mental limitations in hypothetical questions to the VE at the December 2, 2021 hearing. The ALJ included moderate mental limitations in one hypothetical, and the VE responded that such limitations are the "preclusive factor that eliminates all of [Plaintiff's] past work as they are skilled occupations." AR 68. Instead of posing the hypothetical again with "mild" mental limitations, the ALJ posed a hypothetical "without the mental limitations." AR 69. In this scenario, the VE confirmed that the hypothetical person could perform Plaintiff's past relevant work. AR 69. In a final hypothetical, which assumed certain physical and environmental limitations, the ALJ added the following limitation: "due to problems, primarily physical, *but occasionally mental*," the hypothetical person would be off task for periods during the day that would

equal about fifteen percent of a workday. AR 71 (emphasis added). The VE testified that this additional limitation would have a "preclusive effect" — "[t]here would be no jobs." *Id.*

The VE's testimony confirms that, depending on the severity and/or type of mental limitation, such limitations can have a significant impact on the ability to perform certain jobs, including potentially Plaintiff's past relevant work. And at this juncture, it is unclear how Plaintiff's mild mental limitations would impact her ability to perform such jobs. Under these circumstances, the Court cannot conclude that the ALJ's error in failing to consider Plaintiff's mild mental limitations in the RFC assessment was harmless.

**B.     Whether There is a Reasonable Possibility the Mabaquiao Letter Would Change The Outcome**

A claimant may submit new and material evidence for consideration by the Appeals Council. *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1162 (9th Cir. 2012); *see also* 20 C.F.R. § 404.970(a)(5). The Appeals Council will review a case if the new evidence relates to the period on or before the ALJ's decision and there is a "reasonable probability" the new evidence would change the outcome of the ALJ's decision. 20 C.F.R. § 404.970(a)(5).

Here, the Appeals Council considered the Mabaquiao Letter, but concluded that there was no reasonable probability it would change the outcome.[5] AR 2. Plaintiff argues that this conclusion was in error. Doc. No. 11 at 23. The Court will remand if the Mabaquiao Letter "relates to the relevant time period and there is a reasonable possibility [it] would have changed the [ALJ's] decision." *Mengistu v. Colvin*, 537 F. App'x 724, 725 (9th Cir. 2013).

---

[5] Because the Appeals Council considered the Mabaquiao Letter, it is part of the administrative record the Court now reviews. AR 2; *Brewes*, 682 F.3d at 1164 ("[E]vidence submitted to and considered by the Appeals Council is not new but rather is part of the administrative record[.]"); *Wischmann v. Kijakazi*, 68 F.4th 498, 504 (9th Cir. 2023).

First, Dr. Mabaquiao explains that he has treated Plaintiff for over three years and opines that she has been unable to perform any work for the last two and a half years. *Id.* Thus, the Mabaquiao Letter relates to the relevant time period. Next, the Mabaquiao Letter states that Plaintiff spends the majority of her time at home laying down in bed, that she cannot do household chores like laundry or cooking, that she lives with her mother due to her inability to maintain her household, and that she was prescribed an electric scooter for mobility because she cannot walk a block. *Id.* The ALJ already considered this information. Based on Plaintiff's testimony, the ALJ was aware that Plaintiff had difficulty walking, was prescribed a scooter, lived with her mother because she cannot clean her home, and that she spends 85% of her day reclining or laying down. AR 54–55, 65. The ALJ also acknowledged Plaintiff's limitations regarding cooking and laundry in his decision. AR 22.

The Mabaquiao Letter goes on to detail Plaintiff's chronic pain in her spine, joints, and limbs, requiring pain clinic visits and, "as far as [Dr. Mabaquiao] can tell," Plaintiff has a type of spondyloarthropathy SpA. AR 13. The Mabaquiao Letter further notes that Plaintiff has elevated markers of inflammation and that the spondyloarthropathy is possibly associated with her chronic diarrhea. *Id.* Again, the ALJ was aware of these issues at the time of his decision. Plaintiff's representative laid out many of Plaintiff's physical impairments at the hearing, including spondyloarthropathy, diarrhea, and inflammation. AR 43. The ALJ also acknowledged Plaintiff's pain, inflammation, and diarrhea issues in his decision. AR 22, 28. While the ALJ does not specifically address spondyloarthropathy in his decision, Plaintiff alleged the condition directly in her claim for benefits and the ALJ considered all the symptoms described above. AR 125.

Lastly, the Mabaquiao Letter sets out in detail Plaintiff's purported gastrointestinal issues related to weight loss, chronic nausea preventing use of oral medication, potential malnutrition, numbness, and decreased balance. AR 13. The ALJ heard testimony regarding Plaintiff's purported weight loss, malnourishment, and being underweight. AR 43, 54–55. The ALJ also directly addresses Plaintiff's reported issues with balance in his decision. AR 25, 26. The ALJ did not directly address or hear testimony regarding chronic

nausea or numbness, but the administrative record repeatedly documents Plaintiff's nausea issues. AR 575, 668, 1114, 1118, 1270; *see Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence.").

The only information in the Mabaquiao Letter that does not otherwise appear in the administrative record is Dr. Mabaquiao's report that Plaintiff "has some numbness in her feet and legs[.]" AR 13. Plaintiff denied numbness in her medical reports. *See, e.g.*, AR 574, 1057, 1061, 1066, 1070. Thus, this represents the only "new" information in the Mabaquiao Letter. However, Dr. Mabaquiao does not connect this short and vague description to a particular diagnosis or impairment or identify any associated functional limitations. He states instead: "I wonder if [Plaintiff] has malnutrition as well since she has numbness in her feet and legs and decreased balance such that she has had falls." AR 13. In the absence of any diagnostic records, there is no reasonable possibility that this vague and non-conclusive statement would change the outcome of the ALJ's decision.

Notably, Plaintiff places much significance on the Mabaquiao Letter to the extent it confirms prescription of an electric scooter. Doc. No. 11 at 24. However, the ALJ did not reject the representation that Plaintiff was prescribed a scooter, but rather the suggestion that it was medically necessary. AR 29. Further, the assertions in the Mabaquiao Letter do not cure the primary reason for the ALJ rejecting Dr. Mabaquiao's opinion, namely that the opinion was not supported by his own treatment records or imaging studies and was inconsistent with pain management records. AR 29–30. Critically, Plaintiff does not challenge the ALJ's conclusion that Dr. Mabaquiao's opinion was unpersuasive.

In short, given the information conveyed in the Mabaquiao Letter, the majority of which was already considered and analyzed by the ALJ, the Mabaquiao Letter does not provide a basis for remand.

## V.   CONCLUSION

Based on the foregoing, the Court **VACATES** the Commissioner's decision denying benefits and **REMANDS** for further proceedings consistent with this Order. Accordingly,

**IT IS HEREBY ORDERED** that judgment be entered vacating the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings. The Clerk of the Court is directed to close this action.

     **IT IS SO ORDERED.**

Dated:  September 30, 2024

_____
Honorable Valerie E. Torres
United States Magistrate Judge